Terry HANNERS *v.*
GIANT OIL COMPANY of ARKANSAS, INC.

07-1314                                              284 S.W.3d 468

Supreme Court of Arkansas
Opinion delivered May 15, 2008

*John B. Mayes*; and *Reid, Burge, Prevallet & Coleman*, by: *Robert L. Coleman*, for appellant.

*Gill Elrod Ragon Owen & Sherman, P.A.*; by: *Matthew B. Finch* and *Kelly W. McNulty*, for appellee.

JIM HANNAH, Chief Justice. Terry Hanners appeals an order of the Mississippi County Circuit Court granting summary judgment in favor of appellee Giant Oil Company of Arkansas, Inc. Hanners also appeals the circuit court's order awarding attorney's fees and costs to Giant Oil under Ark. Code Ann. § 16-22-308 (Repl. 1999). This is the second appeal of this case involving the interpretation of a purchase-option provision and the award of attorney's fees and costs. The first appeal was dismissed without prejudice pursuant

to Ark. R. Civ. P. 54(b), because the summary judgment order appealed from left a counterclaim unresolved. *See Hanners v. Giant Oil Co. of Ark., Inc.*, 369 Ark. 226, 253 S.W.3d 424 (2007). On appeal, Hanners raises two arguments for reversal: the circuit court erred in (1) granting Giant Oil's motion for summary judgment in this declaratory judgment action because the purchase-option provision drafted by Giant Oil's attorney is ambiguous, and (2) awarding $7,500 in attorney's fees and costs to Giant Oil because Ark. Code Ann. § 16-22-308 does not allow for the award of attorney's fees in declaratory judgment actions where no claim is made to recover for breach of contract, no claim is made for the recovery of damages, and no damages are recovered. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(7) because this is the second appeal following an appeal that was decided in this court.

On August 12, 1981, Hanners and Giant Oil entered into a lease agreement whereby Hanners leased real property to Giant Oil for use as a gas station and convenience store. The lease provided for five lease periods, each period being a five-year term. The first or "primary term" under the lease began on January 1, 1982. Each subsequent term commenced at the end of the prior term unless "more than sixty days prior to the end of any term" Giant Oil notified Hanners it did not wish to "renew any further." In that case, the lease terminated at the end of the then "current term." The lease also contained the following purchase-option provision:

> 3.4 Lessor hereby grants unto Lessee the right to purchase the premises for $150,000.00 at the end of the primary term and the first option period. Thereafter, for the three 5-year terms, this option price shall increase to $200,000.00.

Throughout the years, Giant Oil exercised its renewal option, and on June 1, 2004, during the fifth and final term under the lease, Giant Oil sent a letter to Hanners notifying him of its intention to exercise the option of purchasing the leased real property. In a June 25, 2004 letter, Hanners, through his attorney, informed Giant Oil that he would not sell the property because Giant Oil had failed to notify Hanners as required by the lease agreement.

On September 23, 2004, Giant Oil filed a complaint for declaratory judgment concerning the rights, status, and legal relations of Giant Oil and Hanners in the lease agreement, and

seeking a judgment declaring: (a) Giant Oil had provided reasonable notice to Hanners of its exercise of the purchase option; (b) Giant Oil was contractually entitled to purchase the lease property on December 31, 2006, under the terms of the purchase option; and (c) the lease agreement did not contain a notice requirement. On November 14, 2005, Giant Oil filed a motion for summary judgment, asserting that the plain and unambiguous language of the lease clearly entitled Giant Oil to purchase the leased property at the end of the primary term of the lease and at the end of any of the four subsequent optional terms of the lease.

On December 2, 2005, Hanners filed an amended answer and counterclaim.[1] In the amended counterclaim, Hanners argued that he was entitled to a judgment declaring: (a) the agreement between Hanners and Giant Oil required Giant Oil to exercise its option to purchase no later than the end of the third renewal term; (b) Giant Oil failed to purchase the property within that time provided by the lease agreement; and (c) Hanners is not obligated to sell the real property to Giant Oil at the end of the current lease term. Hanners also prayed that Giant Oil's complaint be dismissed. That same day, Hanners filed his response to Giant Oil's motion for summary judgment, contending that summary judgment should not be granted because the lease agreement was not clear and, at best, it was ambiguous. Hanners also contended that the lease agreement did not entitle Giant Oil to purchase at any time, but that the purchase option had to be exercised before the end of the third renewal term. In addition, in response to Giant Oil's motion for summary judgment, Hanners requested that the court grant the relief requested in his counterclaim. In response, on December 19, 2005, Giant Oil requested that the circuit court dismiss Hanners's counterclaim.

On February 3, 2006, a hearing was held on Giant Oil's motion for summary judgment. Following this hearing, on March 27, 2006, the circuit court entered a judgment granting Giant Oil's motion for summary judgment finding "[t]he terms of the Lease Agreement are unambiguous, and according to the plain and ordinary meaning of Paragraph 3.4 of the Lease Agreement, Giant Oil Company of Arkansas, Inc. is entitled to purchase the property described in the Lease Agreement for $200,000.00 on December 31, 2006."

---

[1] Hanners's original answer and counterclaim was filed on February 18, 2005.

Following the March 27 order, Giant Oil filed a motion for attorney's fees and costs. On July 5, 2006, a hearing was held on the motion. In an order entered July 18, 2006, the circuit court found that Giant Oil was entitled to $7,500 in attorney's fees and costs.

### Summary Judgment

Summary judgment should be granted only when it is clear that there is no issue of fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Windsong Enters., Inc. v. Upton*, 366 Ark. 23, 233 S.W.3d 145 (2006). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, responses to requests for admission, and affidavits show that there is no genuine issue of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Id.* The burden of proving that there is no genuine issue of material fact is upon the moving party. *Id.* On appellate review, we must determine if summary judgment was proper based on whether the evidence presented by the moving party left a material question of fact unanswered. *Id.* This court views the proof in a light most favorable to the party resisting the motion, resolving any doubts and inferences against the moving party, to determine whether the evidence presented left a material question of fact unanswered. *Id.*

The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. *See Alexander v. McEwen*, 367 Ark. 241, 239 S.W.3d 519 (2006). In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *See id.* "The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it." *Coleman v. Regions Bank*, 364 Ark. 60, 65, 216 S.W.3d 569, 574 (2005) (citing *Missouri Pac. R.R. Co. v. Strohacker*, 202 Ark. 645, 152 S.W.2d 557 (1941)). It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement. *See Alexander, supra.*

Where there is uncertainty of meaning in a written instrument, an ambiguity is present. *See id.* (citing *Black's Law Dictionary* 88 (8th ed. 2004)). Where an ambiguity is found within the contract, parol evidence may be admitted. *Ultracuts Ltd. v. Wal-*

*Mart Stores, Inc.*, 343 Ark. 224, 33 S.W.3d 128 (2000). It may not be admitted to alter, vary, or contradict the written contract, but it may be admitted to prove an independent, collateral fact about which the written contract was silent. *Id.*

Hanners claims that the circuit court erred in granting summary judgment because the purchase-option language is ambiguous. Hanners's interpretation of the lease agreement was that Giant Oil only had the right to purchase the property up through the end of the third renewal term, which ended on December 31, 2001. He states that this interpretation of the contract is consistent with what he was told by Giant Oil's vice president and Giant Oil's attorney at the time the contract was signed.

According to Hanners, at the time he agreed to enter into the lease agreement, he discussed the matter with Giant Oil's vice president, George Barry, and Giant Oil's attorney, Henry Swift, and they all understood that the option to purchase had to be exercised while Giant Oil still had the option to renew for another term. Hanners maintains that no renewal time remained at the time Giant Oil gave notice that it intended to purchase the property, because the letter dated June 1, 2004, giving notice that Giant Oil wanted to purchase the property, was given during the last term, which ended December 31, 2006. In short, Hanners takes the position that Giant Oil simply waited too late to exercise its option to purchase the property.

Hanners asserts that, if the court reads paragraphs 1.1, 1.2, and 3.4 of the lease agreement, together in the context of what Hanners was told at the time he signed the contract, Hanners's interpretation of that language makes perfect sense.

Paragraphs 1.1, 1.2, and 3.4 of the lease agreement provide:

> 1.1 *Term of Lease Contract*: The term of this lease shall commence on January 1st, 1982, and shall continue for a primary term of five years. Thereafter, Lessee may renew this Lease for four additional five year periods. All of such renewals will be on the same terms and conditions as provided in this Lease except as to rent. All of the renewal terms for which options are hereby granted shall be each in turn deemed exercised unless Lessee shall have more than sixty days prior to the end of any term which may at that time be current, notified Lessor that it does not wish to renew any further, in which case the Lease shall terminate at the end of whatever term at that time may be current.

1.2 *Rentals*: The rentals to be paid during the terms of this Lease shall be as follows:

(a) $650.00 per month for the primary term of five years;

(b) $650.00 per month for the first renewal term of five years;

(c) $750.00 per month for the second renewal term of five years;

(d) $800.00 per month for the third renewal term of five years; and

(e) $850.00 per month for the fourth renewal term of five years.

3.4 Lessor hereby grants unto Lessee the right to purchase the premises for $150,000.00 at the end of the primary term and the first option period. Thereafter, for the three 5-year terms, this option price shall increase to $200,000.00.

Hanners contends that, under the interpretation advanced by Giant Oil, which was accepted by the circuit court, Giant Oil was entitled to purchase the property at any time until its right to occupy the property ended — December 31, 2006 — without giving any notice to Hanners. In sum, Hanners states that Giant Oil's interpretation is not consistent with what Giant Oil's attorney and vice president told him before and at the time the contract was signed; is not consistent with the language used in the contract; and "is contrary to normal business practice and common sense."

To accept Hanners's interpretation of the lease agreement, this court must agree with Hanners's assertion that, in paragraph 3.4, the words "primary term" and the words "first option period" are synonymous and interchangeable terms that both make reference to the first five-year term of the lease during which Giant Oil had the option to either renew the lease or buy the property for $150,000. This is not a reasonable interpretation of the language used in the lease agreement.

Paragraph 1.1 of the lease agreement divides the lease into five distinct periods, each with a five-year term. In both paragraphs 1.1 and 3.4, the lease provides that the lease is comprised of one

primary term and four option periods, all of which are five years in duration. In viewing paragraph 3.4 in concert with the entire lease, specifically the terminology contained in paragraph 1.1, it is obvious that Giant Oil was entitled to purchase the property during all of the five terms, and specifically, at the end of the final term of the lease, December 31, 2006.

Here, the circuit court correctly concluded that the lease was unambiguous and that the lease agreement allowed Giant Oil to purchase the property at the end of the final option period, which expired on December 31, 2006. Having found that the lease agreement was unambiguous, the circuit court did not err in granting summary judgment in favor of Giant Oil because there were no material facts left unanswered.

### Attorney's Fees

Hanners contends that the circuit court erred in awarding attorney's fees and costs to Giant Oil in the amount of $7,500 because Ark. Code Ann. § 16-22-308 does not allow for the award of attorney's fees in declaratory-judgment actions where no claim is made to recover for breach of contract, no claim is made for the recovery of damages, and no damages are recovered. Our general rule relating to attorney's fees is well established and is that attorney's fees are not allowed except when expressly provided for by statute. *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990). An award of attorney's fees will not be set aside absent an abuse of discretion. *See Harris v. City of Fort Smith*, 366 Ark. 277, 234 S.W.3d 875 (2006).

Section 16-22-308 provides in relevant part that "[i]n any civil action to recover on . . . [a] breach of contract, . . . the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs." The court must determine whether § 16-22-308 provides for attorney's fees in the present case.

We review issues of statutory interpretation de novo. *Harris, supra.* We are not bound by the circuit court's decision; however, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct on appeal. *Id.* When reviewing issues of statutory interpretation, we keep in mind that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the

language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Id.*

Here, the circuit court concluded that, as the prevailing party in a civil action regarding a contract, Giant Oil was entitled to attorney's fees pursuant to § 16-22-308. Further, the circuit court awarded costs, pursuant to Ark. Code Ann. § 16-111-111 (Repl. 2006).

■ The circuit court erred in its interpretation of § 16-22-308. Giant Oil's complaint states that it "is brought pursuant to A.C.A. § 16-111-101 *et seq.* (1987) to obtain a declaratory judgment concerning the rights, status and legal relations of Giant Oil and Hanners in the Lease Agreement." This is an action brought under Arkansas's Declaratory Judgment Act, and Giant Oil points to nothing in the Act that allows the court to award attorney's fees, even where the underlying dispute arises from a contract. Because Giant Oil prevailed in a declaratory-judgment action, and not a breach-of-contract action, the circuit court did not have discretion to award attorney's fees pursuant to § 16-22-308.[2] Therefore, the circuit court's award of attorney's fees must be reversed.

---

[2] Giant Oil contends that *Stilley v. James*, 347 Ark. 74, 60 S.W.3d 410 (2001), offers support for its position that it is entitled to attorney's fees. In that case, this court upheld the award of attorney's fees pursuant to § 16-22-308 where the underlying case was a declaratory-judgment action involving an indemnity agreement.

The *Stilley* case is distinguishable from the instant case. Here, Giant Oil merely asked for an interpretation of the lease agreement and a declaration of the parties' rights. No claim was made to recover for breach of contract, no claim was made for the recovery of damages, and no damages were recovered. In fact, under Giant Oil's interpretation of the lease agreement, which was adopted by the circuit court, there was no way Hanners could have been in breach of contract at the time the suit was filed, or at the time of the summary judgment, or at the time of the attorney's fees hearing, because both Giant Oil and the circuit court read the contract to allow Giant Oil to wait until December 31, 2006, the last day of the agreement, to exercise its purchase option.

Further, at no time prior to the entry of summary judgment did Giant Oil assert that Hanners had breached its contract. In contrast, the prevailing parties in *Stilley* sued Stilley for breach of an indemnity contract and recovered a judgment in the amount of $200,000 based

While there is no provision for attorney's fees under the Arkansas Declaratory Judgment Act, there is a provision for costs. Pursuant to Ark. Code Ann. § 16-111-111, "[i]n any proceeding under this chapter, [Declaratory Judgments], the court may make such award of costs as may seem equitable and just." Thus, it was within the circuit court's discretion to award costs to Giant Oil. However, this court must reverse and remand on the issue of costs because the language used by the circuit court in its order awarding attorney's fees and costs makes it impossible to determine what portion of the award is for attorney's fees, which is not allowable under § 16-111-111, and what portion of the award is for costs, which is allowable under § 16-111-111. The circuit court merely concluded that Giant Oil was entitled to "$7,500.00 representing their reasonable attorney's fees and costs in this matter." Accordingly, we reverse and remand to the circuit court for a determination of what costs may be awarded pursuant to § 16-111-111.

Affirmed in part; reversed in part; reversed and remanded in part.

---

on Stilley's breach of that agreement. The cause of action in *Stilley* fell within the provisions of § 16-22-308; Giant Oil's declaratory judgment against Hanners does not.