2011 Ark. 50

**Alfred (John) Henry RACINE, III, Appellant**

v.

**Helane Marie NELSON, Appellee.**

No. 09–1192.

Supreme Court of Arkansas.

Feb. 9, 2011.

Katherine Blackmon–Solis, for appellant.

Stephanie Chamberlin PA, for appellee.

COURTNEY HUDSON HENRY, Justice.

Appellant Alfred (John) Henry Racine, III, appeals an order of the Pulaski County Circuit Court granting an adoption petition filed by appellee Helane Marie Nelson for the adoption of the parties' biological child, L.N. On appeal, appellant argues that the circuit court erred in interpreting our adoption statutes, challenges the constitutionality of the consent statute, disputes the circuit court's finding concerning the child's best interest, and contends that his paternity petition should not have been dismissed. Our jurisdiction is proper pursuant to Arkansas Supreme Court Rule 1–2(a)(1), (b)(3) (2010). We affirm.

## I. *Facts*

Appellee, a forty-two-year-old professional jazz singer, and appellant lived in Charlottesville, Virginia. The couple never married but continued a tumultuous relationship over a period of five years. In the spring of 2006, appellee became pregnant with a child whom she believed appellant fathered. Appellant's wife, Victoria Platt, also became pregnant with appellant's child at the same time, but she miscarried in September 2006.

Appellant learned of appellee's pregnancy on May 12, 2006, and shortly thereafter, ended his relationship with appellee. However, appellant accompanied appellee to one prenatal appointment on May 16, 2006, when appellant viewed the ultrasound images of the child. On May 26,

2006, appellant gave appellee a check for $750, which she deposited into her checking account. Appellant did not provide further financial assistance to appellee for the child or for any medical costs incurred in connection with the child's birth.

Appellee suffered difficulties associated with her pregnancy because of her age and fibroid tumors. As a result of complications associated with the tumors, appellee became bedridden. Appellee kept appellant informed of her pregnancy, doctor's appointments, and general condition from May 2006 to October 2006. According to appellee, she had health insurance, but she did not have a maternity rider, and an initial estimate for her maternity expenses exceeded $80,000.

Appellee remained in Charlottesville until August 2006, when she moved to Little Rock to stay with a friend, but appellee did not inform appellant that she moved to Arkansas. At that time, appellee secured her own apartment, had a telephone installed, obtained an Arkansas driver's license, and registered to vote in Arkansas. While she lived in Arkansas, appellee kept her cell-phone number and email address on her professional website.

On October 12, 2006, appellant asked his Virginia attorney, Randy Parker, to mail a letter to appellee, stating that she should "cease and desist having any contact with [appellant]." At the request of his client, Parker mailed an identical letter asserting no contact between appellee and Platt. Appellee stated that she had no further contact with appellant except occasional emails and telephone calls, and appellee advised appellant that she would not speak with him unless he retracted his previous no-contact demand.

On December 22, 2006, appellee gave birth to the parties' child, L.N., in Little Rock. When appellee delivered her baby, she did not contact appellant to inform him of the birth. However, appellee did contact a mutual acquaintance, who called appellant to tell him that appellee and the baby were well. Appellant claimed that he placed hundreds of phone calls, sent emails, contacted appellee's family, and left messages with appellee in an attempt to locate her and the child. According to appellant, appellee's family wanted nothing to do with him. Appellant acknowledged that, in January 2008, he hired an investigator who located appellee in Arkansas.

On January 29, 2008, appellant filed a petition for paternity in Pulaski County Circuit Court, alleging paternity of L.N. In his petition, appellant averred that he believed he was the biological father of L.N. and had offered financial support and had attempted to establish a custodial relationship with the child, but his efforts were thwarted by appellee's refusal to cooperate. A DNA test, performed by consent of both parties, confirmed in a report, dated April 16, 2008, that appellant was L.N.'s biological father.

On February 1, 2008, appellee filed a petition for adoption of L.N., alleging that appellant abandoned the minor child, failed to communicate with the child, and failed to provide care and support for the child since her birth. Appellee argued that, pursuant to Arkansas Code Annotated section 9–9–207 (Repl.2009), appellant's consent to the adoption was not required. As of the date of the petition, appellant had not filed with the Arkansas Putative Father Registry, nor had he filed with the Virginia registry.

The circuit court held a temporary hearing on March 31, 2008, concerning both matters. Then, in May 2008, the circuit court issued a letter opinion of its findings stating, *inter alia*, that at the time appellant filed his petition, appellant had not established a significant custodial, person-

al, or financial relationship with L.N. because he allegedly did not know of appellee's whereabouts. In its letter order, the circuit court denied appellee's motion to strike the pleadings filed in the adoption petition and denied her motion to stay the paternity action. The court reasoned that, because the primary consideration in an adoption action is the best interest of the child, appellant's participation in the adoption hearing was necessary.

Additionally, on April 14, 2008, appellant filed a motion for ruling Arkansas Code Annotated section 9–9–207(a)(11) (Repl. 2009) as unconstitutional. In his motion, appellant argued that the statutory provision violated separation of powers, infringed upon constitutional due-process rights under the federal and Arkansas constitutions, and violated his right to privacy. On July 15, 2008, the circuit court issued a letter opinion denying appellant's amended motion to rule section 9–9–207(a)(11) as unconstitutional and allowed appellee to proceed with her adoption petition.

Meanwhile, appellee's counsel hired Allen Noble, a Conway private investigator. In an email dated May 28, 2008, appellee's counsel advised Noble of a purported need to locate appellee. Counsel gave Noble her address in Virginia, her date of birth, the fact that she delivered a baby in December of 2006, and the fact that she was a registered voter and had a valid driver's license. With this information, Noble located appellee in one hour using a free internet search engine, Any Who.

The circuit court held hearings on December 12, 2008, December 18, 2008, and February 19, 2009. Numerous witnesses presented conflicting facts concerning appellant's efforts to locate, communicate, and support L.N. At trial, appellant testified at length regarding his efforts to locate appellee, the nature of his relationship with appellee, his relationship with other women, including his ex-wife, his relationship with his children, his capability as a father, and his character in general. Further, appellant testified about the hiring of a private detective through his attorney; his own hiring of a private detective; his communication with appellee through hundreds of emails, letters, and messages; his contact with appellee's family; and his contact with appellee's booking agent.

However, appellee presented witnesses to refute this testimony. Several witnesses, including appellee's pastors and the director of L.N.'s preschool, testified that L.N. appeared to be a smart, well-adjusted child and that appellee appeared to be a capable parent. Lori Racine, appellant's ex-wife, testified that she believed appellant was capable of violence when provoked. Kevin Olivera, appellee's booking agent, testified that he never received a call from someone trying to reach appellee. Charles Nelson III, appellee's brother, presented testimony that he spoke to appellant in 2006 and never heard from him again. Additionally, appellee testified that appellant's attorney issued a letter ordering her to cease and desist any contact with him approximately two months prior to the child's birth. Appellee also testified that appellant provided no monetary support since L.N.'s birth and that, although she incurred $30,000 in pregnancy expenses, appellant's only means of financial support included the $750 check given to her on May 26, 2006. Appellee further stated that appellant had never spoken to the child since her birth and that he sent two bouquets of flowers for Easter in 2008. Appellee testified that she did not believe appellant had established any monetary fund for L.N.'s use, nor had she received a copy of appellant's will, which allowed for his children, including those children born subsequent to the will's execution, to receive a pro rata share with his

two other children. Appellee further testified that, after L.N. was born, she received a letter from appellant in February 2007, a few messages, and a couple of emails in September and October of 2007.

On May 5, 2009, the circuit court entered an order with the following factual findings. The court found appellant to be a "controlling, manipulative, abusive individual" who controlled appellee during their relationship and "physically and mentally" abused her. The court found appellant's testimony to be "inconsistent and contrary" to appellee's credible testimony, noting that the court believed appellant to be "one of the smoothest prevaricators ever to testify" before it, leaving the court with the "distinct impression" that appellant was not truthful. However, the circuit court found appellee to be "credible and believable" and that appellant's "lack of contact, support, or concern" for appellee or the child was displayed through appellee's credible testimony. Additionally, the circuit court found that appellant did not try to locate appellee or L.N. from the date of appellee's move to Arkansas in August 2006 until late 2007. Appellant never registered with the Arkansas Putative Father Registry. Further, the court made the following conclusions of law: (1) appellant's consent to the adoption was not required pursuant to section 9–9–207(a)(2) and, accordingly, appellant was not entitled to notice pursuant to section 9–9–212 (Repl. 2009), despite having been served with the adoption petition and his appearance at trial; (2) appellant was the putative father who failed to timely register with the Arkansas Putative Father Registry, and appellant failed to establish a significant custodial, personal, or financial relationship with the child prior to the filing of the adoption petition; (3) appellant had a "moral as well as a legal obligation" to support the child; that his failure to support and communicate with the child constituted a "significant failure"; and (4) L.N.'s best interest is the controlling factor on whether to grant the adoption. To that end, the court, considering section 9–9–215 (Repl. 2009) and the best interest of the child, granted appellee's adoption petition.

On June 29, 2009, the circuit court entered a final decree of adoption incorporating the rulings in its May 5, 2009 letter opinion. Specifically, the circuit court found that appellant's consent to the adoption was not required, pursuant to section 9–9–207; that appellant's sole means of financial support included appellant's $750 check given to appellee in May of 2006; that appellant never communicated with or supported L.N.; that appellant failed to support or establish some financial support mechanism for the child; that appellant made no good-faith effort to locate appellee or the child from the date that appellee moved to Arkansas until late 2007; that appellant failed, without justifiable cause, to establish a significant, personal, or financial relationship with L.N.; that appellant was a putative father who failed to timely register with the Arkansas Putative Father Registry; and that it was in L.N.'s best interest to grant the adoption.

That same day, the circuit court entered two separate orders disposing of the parties' motions. The first order granted appellant's motion to intervene and denied all pending motions, including appellant's amended motion for ruling section 9–9–207(a)(11) as unconstitutional. The court entered a second order, filed on June 29, 2009, and dismissed with prejudice appellant's petition for paternity because of the entry of the decree of adoption terminating appellant's parental rights. From these three June 29, 2009 orders, appellant brings his appeal.

## II. *Points on Appeal*

Appellant argues that the circuit court erred as a matter of law in granting the adoption decree and that the circuit court's findings of fact were clearly erroneous. In his reply brief, appellant gives a more concise overview of his arguments on appeal: (1) whether appellant's consent was required; (2) whether the circuit court erred in finding that appellant failed to communicate and support the child, pursuant to section 9–9–206 (Repl.2009) and section 9–9–207(a)(2); (3) whether the adoption statute is unconstitutional; and (4) whether the circuit court properly considered the best interest of the child. Additionally, in his brief, appellant argues that appellant's paternity petition should have been adjudicated before the adoption petition. We now turn to appellant's arguments.

## A. *June 29, 2009 Orders*

As a threshold issue, we address appellee's argument that the June 29, 2009 order denying appellant's motion for ruling section 9–9–207 as unconstitutional is not a final, appealable order pursuant to Arkansas Rule of Civil Procedure 54(b) (2010). Appellee asserts that the notice of appeal references this order, rather than the other two orders, because the amended notice of appeal contains a provision to include an affidavit of service filed on August 11, 2009. Appellee urges that this reference to the affidavit of service addresses the service upon the Attorney General concerning appellant's constitutional motion and, therefore, the order denying that motion denotes the one on appeal. Appellant responds that the notice of appeal was proper, as it brought up both the adoption decree and the intermediary orders denying all pending motions, as the court entered all three orders on the same date.

Rule 3(e) of the Arkansas Rules of Appellate Procedure—Civil provides that a notice of appeal or cross-appeal "shall designate the judgment, decree, order or part thereof appealed from … [.]" Ark. R.App. P.—Civ. 3(e) (2010). Orders not mentioned in a notice of appeal are not properly before the appellate court. *Id.* However, Rule 2(b) of the Arkansas Rules of Appellate Procedure—Civil provides that "[a]n appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affecting the judgment." Ark. R.App. P.—Civ. 2(b) (2010).

While the filing of a notice of appeal is jurisdictional, this court has required only substantial compliance with the procedural steps set forth in Rule 3(e). *See Helton v. Jacobs,* 346 Ark. 344, 57 S.W.3d 180 (2001); *Rogers v. Tudor Ins. Co.,* 325 Ark. 226, 925 S.W.2d 395 (1996). This court has stated that a notice of appeal that fails to designate the judgment or order appealed from, as required under Rule 3(e), is deficient, but such a defect is not necessarily fatal to the notice of appeal. *See Duncan v. Duncan,* 2009 Ark. 565, 2009 WL 3786850 (citing *Jasper v. Johnny's Pizza,* 305 Ark. 318, 807 S.W.2d 664 (1991)).

Here, appellant filed an amended notice of appeal, appealing the circuit court's June 29, 2009 "order" and designating "the entire record, including all pleadings, exhibits, and transcripts of all hearings, including but not limited to the hearings on December 12, 2008, December 15, 2008, and February 19, 2009, and the affidavit of service filed on August 11, 2009." This amended notice of appeal designated the case number, "PAD 2008–162," and all three orders that contain that docket number. Therefore, we hold that the reference to a single "order" was a scrivener's error. We further hold that such an error does not render the notice of

appeal fatally deficient due to the fact that the notice of appeal substantially complies with Rule 3(e). For these reasons, appellee's argument fails, and we address the merits of appellant's arguments.

**B.** *Consent to Adoption*

On appeal, appellant generally asserts that the adoption statute must be interpreted against adoption and in favor of his parental rights. Specifically, appellant argues that the circuit court erred in interpreting sections 9–9–206 and 9–9–207 and in ruling that his consent was not required. Appellant contends that the circuit court erred in granting the petition for adoption because there was insufficient evidence that he had failed significantly without justifiable cause to communicate with and support L.N.

The central issue under this point is whether appellant's consent to the adoption of L.N. was required. While appellant urges us to apply a de novo standard of review in interpreting the statutes at issue, we nevertheless adhere to a clearly erroneous standard in our review of the circuit court's application to the case *sub judice.* Adoption statutes are strictly construed, and a person who wishes to adopt a child must prove that consent is unnecessary by clear and convincing evidence. *Powell v. Lane,* 375 Ark. 178, 289 S.W.3d 440 (2008). A circuit court's finding that consent is unnecessary because of a failure to support or communicate with the child will not be reversed unless clearly erroneous. *Id.* There is a heavy burden placed upon the party seeking to adopt a child, without the consent of a natural parent, to prove the failure to communicate or the failure to support by clear and convincing evidence. *Harper v. Caskin,* 265 Ark. 558, 580 S.W.2d 176 (1979).

Arkansas Code Annotated section 9–9–206 governs persons who are required to

consent to the adoption and states in pertinent part:

(a) Unless consent is not required under § 9–9–207, a petition to adopt a minor may be granted only if written consent to a particular adoption has been executed by:

. . . .

(2) The father of the minor if ... a court has adjudicated him to be the legal father prior to the time the petition for adoption is filed, or he proves a significant custodial, personal, or financial relationship existed with the minor before the petition for adoption is filed[.]

In contrast, Arkansas Code Annotated section 9–9–207 pertains to those persons from whom consent is not required. Pursuant to section 9–9–207(a)(2), a parent's consent to adoption is not required of

a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree[.]

"Failed significantly" certainly does not mean "failed totally." *Pender v. McKee,* 266 Ark. 18, 582 S.W.2d 929 (1979). It only means that the failure must be significant, as contrasted with an insignificant failure. *Id.* It denotes a failure that is meaningful or important. *Id.* Also important to note is that the one-year period may be any one-year period, not merely the one-year period preceding the filing of the petition for adoption. *In re Adoption of A.M.C.,* 368 Ark. 369, 246 S.W.3d 426 (2007).

In the present case, we focus our analysis on section 9–9–207. Here, the circuit court found that appellant's consent was not required pursuant to section 9–9–

207(a)(2) because appellant failed, without justifiable cause, to establish communication or financial support to L.N. Further, the court found that appellant made no good-faith effort to locate appellee or ⌊₁₃the child from August 2006, when appellee moved to Arkansas, until late 2007. The court ruled that appellant could have located appellee at any time. The court further ruled that, other than the $750 check dated May 26, 2006, appellant provided no other monies, care, or assistance to appellee or the child.

The circuit court's findings were not clearly erroneous. Here, appellee received the cease-and-desist letter, dated October 12, 2006. Despite appellant's testimony that he sent hundreds of emails, letters, and messages in an attempt to find appellee, appellant failed to produce such evidence. Appellee testified that she received a few emails and letters, but appellant himself admits that he did not locate appellee in Arkansas until January 2008. With regard to support, appellant claimed that he gave appellee $1100, but the evidence suggests that the $750 check, dated May 26, 2006, was the only form of financial assistance given to appellee for the child throughout the child's life. This evidence displays appellant's significant failure to communicate with and to support the child from the time of her birth in December 2006 until appellant filed a paternity action in January 2008. Thus, any argument regarding appellant's contact with appellee during her pregnancy is unavailing.

■ Further, we have stated repeatedly that the circuit court is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *In re Adoption of M.K.C.*, 2009 Ark. 114, 313 S.W.3d 513. The circuit court gave weight to appellee's version of the facts that appellant failed to communicate and to support the child throughout her life, and we cannot say that these factual findings were clearly erroneous. Therefore, we hold that ⌊₁₄the circuit court did not err in ruling that appellant's consent to the adoption was not required pursuant to section 9–9–207(a)(2).[1]

### C. *Constitutionality of Section 9–9–207(a)(11)*

On appeal, appellant argues generally that Arkansas's adoption statute is unconstitutional as applied because it makes no exception for circumstances when the mother allegedly conceals her whereabouts and eliminates the chance to forge a relationship with the child. In his motion, appellant asserted that section 9–9–207(a)(11) provides that consent to adoption is unnecessary for a putative father who does not register with the Arkansas Putative Father's Registry prior to the filing of an adoption petition. Appellant further argued that appellee willfully failed to give him actual notice of L.N.'s birth until the filing of her adoption petition, and he did not know her whereabouts. In his amended motion for ruling section 9–9–207(a)(11) as unconstitutional, appellant contended that the provision violates separation of powers and due process and infringes upon his right of privacy with his child.

At the outset, we note that appellant couches his constitutional argument in terms of section 9–9–207 in its entirety, but the circuit court denied appellant's amended motion for ruling Arkansas Code Annotated section 9–9–207(a)(11) as unconstitutional. Thus, we limit our appellate review to this ruling by the circuit court.

---

1. Because we hold that appellant's consent was not required pursuant to section 9–9– 207(a)(2), we need not discuss appellant's arguments concerning section 9–9–206.

■ This issue requires our statutory interpretation of section 9–9–207(a)(11) rather than the entire 207 section. We review issues of statutory interpretation de novo. *Hanners v. Giant Oil Co. of Arkansas, Inc.*, 373 Ark. 418, 284 S.W.3d 468 (2008). We are not bound by the circuit court's decision; however, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct on appeal. *Id.* When reviewing issues of statutory interpretation, we keep in mind that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* Additionally, we have consistently held that statutory provisions involving the adoption of minors are strictly construed and applied. *See In re Adoption of Tompkins*, 341 Ark. 949, 20 S.W.3d 385 (2000). Every statute carries a strong presumption of constitutionality. *See Ark. Hearing Instrument Dispenser Bd. v. Vance*, 359 Ark. 325, 197 S.W.3d 495 (2004).

■ Section 9–9–207(a)(11) provides that consent to adoption is not required of "a putative father of a minor who is listed on the Putative Father Registry but who failed to establish a significant custodial, personal, or financial relationship with the juvenile prior to the time the petition for adoption is filed." A "putative father" is defined as any man not legally presumed or adjudicated to be the biological father of a child, but who claims or is alleged to be the biological father of the child. *McAdams v. McAdams*, 353 Ark. 494, 109 S.W.3d 649 (2003).

■ Appellant's argument is unavailing, as he appears to have misread section 9–9–207(a)(11). This section does not apply to putative fathers who do not register with the Arkansas Putative Father's Registry prior to the filing of an adoption petition. Rather, section 9–9–207(a)(1) states that consent is not required of "a putative father *who is listed on the Putative Father Registry* but who failed to establish a significant custodial, personal, or financial relationship with the juvenile prior to the time the petition for adoption was filed." (Emphasis added.) Here, the circuit court, in its May 5, 2009 letter opinion, stated that appellant "has never registered with the Arkansas Putative Father Registry," and again ruled that appellant was a putative father who failed to timely register with the Arkansas Putative Father Registry in the final decree. As such, we hold that appellant has no standing to challenge the constitutionality of this statutory provision pertaining to putative fathers because he was not listed on the Arkansas Putative Father Registry. Thus, the statute was not applied to him in a discriminatory manner. *See Wineman v. Brewer*, 280 Ark. 527, 660 S.W.2d 655 (1983).

We further note that the circuit court afforded appellant the opportunity to participate fully in the adoption proceedings. *See Escobedo v. Nickita*, 365 Ark. 548, 231 S.W.3d 601 (2006) (holding that appellant's interest was adequately protected by his receipt of actual notice of the pending adoption and rejected his argument that his due-process rights have been violated). Any further commentary on the constitutionality of section 9–9–207(a)(11) would be merely advisory. *Allen v. Titsworth*, 279 Ark. 138, 649 S.W.2d 185 (1983).

### D. *Best Interest of the Child*

Appellant argues that the circuit court erred in finding that adoption was in L.N.'s best interest. Specifically, appellant asserts that, notwithstanding whether

consent is necessary, the testimony revealed that appellee allegedly demonstrated attempts to keep appellant, the natural father, from having a relationship with his child. In support of his position, appellant emphasizes his alleged attempts at communication with appellee, his relationship with his other children, and his financial assistance to his other children.

Our standard of review is clear. We will not reverse a circuit court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witness. *In re Adoption of M.K.C., supra.* We give great weight to a circuit court's personal observations when the welfare of young children is involved. *Id.*

In the instant case, appellant failed to avail himself of the opportunity to parent L.N., failed significantly to support her and to communicate with her throughout her lifetime, and took virtually no responsibility for the child other than to establish that he was the biological father. In contrast, appellee displayed that she has adequately supported and maintained the child since her birth and has provided proper care and support for the child. Further, several witnesses, including appellee's pastors and the director of L.N.'s preschool, testified that appellee appeared to be a loving, caring mother, and that L.N. was a smart and well-adjusted child. Additionally, in making its best-interest determination, the circuit court surmised that money was not the sole consideration in determining L.N.'s best interest. To that end, the circuit court weighed L.N.'s potential loss of inheritance from appellant and found that L.N.'s potential inheritance did not outweigh "the emotional turmoil, strife, mental anguish, and potential vio-

lence that a life's exposure to [appellant] would entail." Because we defer to the superior position of the circuit court on issues of credibility, we hold that the circuit court did not err in finding that it was in L.N.'s best interest to grant appellee's adoption petition.

### E. *Appellant's Paternity Petition*

Appellant argues that the circuit court should have adjudicated his paternity petition before appellee's adoption petition. Specifically, appellant asserts that, by acknowledging paternity and by filing his paternity petition for an adjudication of paternity, he tolled the limitations period until the court ruled upon the petition.

In this case, the circuit court dismissed with prejudice appellant's petition for paternity and did not rule upon the tolling issue. We will not consider arguments on appeal when the party has failed to obtain a ruling from the circuit court. *See Johnson v. Cincinnati Ins. Co.,* 375 Ark. 164, 289 S.W.3d 407 (2008). Thus, we are precluded from reaching the merits of appellant's argument on this issue.

Affirmed.