SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–15–906

| | |
|---|---|
| REANNA RODGERS<br>**APPELLANT**<br><br>V.<br><br>DESTINY RODGERS<br>**APPELLEE** | **Opinion Delivered** September 28, 2016<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT, [NO. PR–2014–531–IV]<br><br>HONORABLE MARCIA R. HEARNSBERGER, JUDGE<br><br>AFFIRMED |

## CLIFF HOOFMAN, Judge

This is a stepparent adoption case. The natural mother is appealing from the trial court's order granting the adoption petition of the children's stepmother. The trial court found that appellant Reanna Rodgers's consent to the adoption was not required because the petitioner, appellee Destiny Rodgers, proved that Reanna had failed, for a period of at least one year and without justifiable cause, to communicate with her children or to provide for their care and support as required by law or court order. Reanna argues on appeal that the trial court clearly erred in making these findings, necessitating reversal of the order of adoption. We hold that the trial court did not clearly err, and we therefore affirm the trial court's order of adoption.

The facts are not in material dispute. Chris Rodgers and appellant Reanna Rodgers were married in 2002 and divorced in 2011, wherein the parents were given joint custody of

SLIP OPINION

their four children, who were born between 2004 and 2010.[1]  The divorce case was filed in

Garland County Circuit Court, domestic relations division, DR2011-740-IV.

In May 2013, Chris remarried to appellee Destiny Rodgers.  In August 2013, Chris was

awarded temporary custody of the children pursuant to an ex parte order; Chris had alleged

that Reanna was on drugs and neglectful as a parent.  During the September 4, 2013, hearing

in that case, Reanna appeared pro se, and she submitted to a urine drug test.  She tested

positive for methamphetamine and amphetamines.  She lost joint custody, and her rights of

visitation were suspended.  The trial judge stated in the hearing that "I mean she is not to have

any visitation at all with these children."  The trial judge warned Chris that if he permitted

Reanna any visitation, she would hold Chris in contempt of court.  The trial judge told

Reanna that "when you decide that your children are more important to you than

methamphetamine, then you can certainly come back and you can ask the Court to reverse

this ruling and the Court will certainly look at it.  But until that day happens, then there's not

going to be even visitation with your children."  The trial judge emphasized that "the Court

considers this a temporary order" and that "you can come back in with your attorney and we'll

look at this again."  The trial judge told Reanna that she could come back to court "any time."

The trial judge ordered Reanna to fill out an Affidavit of Financial Means.

The September 6, 2013 "Amended Temporary Order" gave Chris sole custody of the

children and recited that Reanna "should not be entitled to any visitation at this time," that

---

[1] Reanna and Chris had three sons and one daughter.  KR was born in January 2004, JR was born in April 2005, TR was born in May 2008, and AR was born in March 2010.

Reanna "shall complete an affidavit of financial means and file same in this case file," that "no child support shall be ordered from [Reanna] at this time," that Reanna was required to submit to a hair-follicle drug test by separate order, and that Reanna "may petition this court for a review of the issue of child custody, or child visitation, at such time as [Reanna] can pass a drug screen."

On October 17, 2013, and on April 19, 2014, Reanna filed two separate drug test results showing that she was negative for methamphetamine and other controlled substances. She later admitted that she relapsed on drugs after the October 2013 test and did not ever receive drug treatment; she later claimed, however, to have been drug free since approximately December 2013.

On September 19, 2014, appellee Destiny Rodgers petitioned to adopt the children, who had been living with her and Chris. The case was filed in Garland County Circuit Court, probate division, PR–2014–531–IV. Chris joined the petition and consented to his children being adopted by his wife Destiny. In the petition, Destiny alleged that Reanna's consent was not required because Reanna had failed, for a period of more than one year, without justifiable cause, (1) to provide for the care and support of the children in any meaningful fashion or (2) to communicate with or maintain any significant contact with the children. The petition accused Reanna of failing "to even contact or message the children on birthdays or at Christmas." Destiny alleged that this was all that the applicable statute required, so Destiny sought the adoption without the mother's consent and sought to terminate Reanna's parental rights to these children. On October 7, 2014, Reanna, represented by counsel, responded by

3



filing a general denial of the adoption petition allegations. The matter was assigned to the same trial judge who had presided over the divorce proceedings. Later in October 2014, subsequent to the filing of the petition to adopt, Reanna filed a petition with the trial court in the domestic-relations proceeding to reconsider her rights to visitation or custody.

At the May 2015 hearing, the following testimony was taken. Reanna, who remarried in October 2014 and who now had a five-month-old son, agreed that in the year between September 2013 and September 2014, she had not communicated with or provided support to the children, but she believed that she was justified in those failures due to the trial court's prior order suspending her visitation and not ordering her to pay any child support. She testified that she tried to send money to Chris, although she was still not working, but not until after the petition to adopt was filed, and both times Chris returned the money. Before that time, Reanna said she did not have the means to provide support, even if parents have a general duty under Arkansas law to provide support regardless of any support order. She said that she believed she had been instructed not to have any contact with the children in the order suspending her visitation, and so she abided the trial court's order until she could afford to hire an attorney. Reanna was unaware that there were free attorneys, so she thought she had to save money to hire a lawyer, although she had filed two clean drug screens in the domestic-relations proceedings. Reanna explained that she had been drug free for quite some time. She said she had filed a petition to acquire visitation in the divorce case, but it had not yet been heard. She was willing to be slowly reincorporated into the children's lives and to attend to any therapy. Reanna testified that her "lifestyle today is completely different than

it was when I lost custody of the children. . . . a hundred percent better than it was." She said that she did try to deliver a present to one of the children's school one time, but she feared getting in trouble for doing what she was not supposed to do. "I obeyed Judge Hearnsberger's ruling of not seeing them and I would do anything I can to see them now."

Chris testified that he wanted his wife to adopt the four children, and he complained that Reanna did not file a petition for visitation until after the petition to adopt had been filed. He admittedly rejected Reanna's recent attempts to provide child support. He said that he had heard nothing at all from Reanna since he was given full custody, testifying that:

> During that year after I got custody, I have all of my calendars right there of every day since then of no contact. All the dates of all the football games, no contact. All the birthdays, no contact, no cards. I have not received any contact from Reanna. My parents have not received contact. My wife. My in-laws have not received contact. She did not attend any school activities. I have [a] record. She did not attend any athletic activities. We did not receive birthday cards. Anything. We just had birthdays. . . . I have not heard anything from Reanna at all. I mean nothing. Nothing. Since the last day I saw her in Court. . . . Destiny and I were married on May 11, 2013. Since September 2013, Destiny and I have performed all the parental duties. My wife and I have provided for the financial support of the children . . . I can see her house from our house. And in that whole time frame no birthday cards, no Christmas presents left on the door, no letters. Nothing. No contact. From where she lives she can see where I and the children live. . . . Church is a public place they can come to. All the school events are public. They're not banned from coming to a football game or anything like that. . . . [Since moving in October 2014] I am two miles away from Reanna's house. . . . Even though I had custody and she had no visitation, she could have appealed a long time ago. She could've appealed a long time ago to the Court even after she was clean or got clean a long–I mean nothing. I wouldn't even be able to come to Court if she would've tried. I would have nothing. If she would've tried to be a mom, we wouldn't be here petitioning for adoption.

Destiny testified to her desire to adopt the children, noting that Reanna could have petitioned for visitation in the year prior to her filing for adoption if she wanted to see her children. Destiny testified:

SLIP OPINION

> Reanna had no contact. We waited and waited, and as a mom, I prayed and believed that one day their mom was going to get things together and be a mom, but that didn't happen, and I want consistency and stability for my kids. . . . I did see the September 2013 Order. It said Reanna could petition for visitation and review of custody. She did not do that within the year after the hearing. Not once, nothing. I was waiting for that to happen. As a mom you want to see that happen for your kids, biological or not, but it never happened. I did not receive any frantic calls from her or letters or a letter from a lawyer in her behalf saying she wanted to see the kids. There was no contact. No letters, no emails, no texts, no phone calls, nothing. When the children's birthdays would roll around there was nothing. I even would check Facebook to see if maybe there was a post, a happy birthday, and nothing.

Destiny said that she and Chris did everything as parents for the children and that they called her "Mom."

Reanna's husband Michael Eller said that Reanna had been clean for about a year and a half. He said they talked about Reanna filing a petition for visitation with the children but that Reanna did not have the money to hire an attorney. Reanna's mother said that it took them a year to save the money to hire the attorney that Reanna presently had. Reanna's mother was against adoption and wanted to facilitate the children having visitation with Reanna.

The trial judge stated in open court that this case "needs a lot of thought before the decision is made," so she took the matter under advisement. Approximately two weeks later, on June 5, 2015, Judge Hearnsberger issued a letter ruling. Therein, the trial court found that since the entry of the temporary order denying her visitation in September 2013:

> [Reanna] had no contact whatsoever with her children, their father or their stepmother. She failed to help them financially even though she was not required to pay child support through an order of the Court. She made no phone calls to the children or their father about their well-being. She sent no birthday or Christmas cards or letters or e-mails to her children. She did not attend any school, church or sporting events involving her children.

6

During the time after the Amended Temporary Order, Reanna Rodgers testified she had a clean drug screen but did not petition for a review of visitation or custody. She stated that she lapsed after this drug test in October 2013, but never received drug treatment at any facility. She stated she met a man on Facebook, moved in with him, had his child, married him, and moved with him to her mother's house. She never worked, even though she was capable of working, and stated she had no money to hire an attorney to file a petition. She stated she did not need to work because her husband supported her with his income but she never requested he give her the money she stated she needed to file a petition.

Reanna's mother and step-father encouraged her to hire an attorney many times. . . . During the time the children were in [Destiny's] care, she and their father took over the responsibilities of raising the children.

The trial court found that Reanna's consent was not required pursuant to Ark. Code Ann. § 9-9-207(a)(2) due to her failure significantly and without justifiable cause for at least one year to communicate with the children or to provide for the care and support of the children as required by law or judicial decree. The trial court found that there was clear and convincing evidence to support this conclusion. The trial court's order additionally provided that:

The failure of the children's mother with regards to communication or support were demonstrated to be meaningful, intentional and without justifiable cause. The Respondent's actions during the year following her loss of child custody demonstrated her lack of regard for her children's well-being and instead demonstrated her desire to move on with other interests she obviously found to be more compelling.

The petition to adopt was granted, and this timely appeal followed.

The relevant Arkansas statute, Arkansas Code Annotated section 9-9-207(a)(2), provides that consent to adoption is not required of "a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly and without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree." Failed significantly does not mean failed totally. *Pender*

7

*v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979). It means only that the failure must be significant, as contrasted with an insignificant failure; it denotes failure that is meaningful or important. *Fox v. Nagle*, 2011 Ark. App. 178, 381 S.W.3d 900. Justifiable cause means that the significant failure must be willful in the sense of being voluntary and intentional; it must appear that the parent acted arbitrarily and without just cause or adequate excuse. *Courtney v. Ward*, 2012 Ark. App. 148, 391 S.W.3d 686. Adoption statutes are strictly construed, and a person who wishes to adopt a child must prove by clear and convincing evidence that consent is unnecessary. *Racine v. Nelson*, 2011 Ark. 50, at 11, 378 S.W.3d 93, 100.

A circuit court's finding that consent is unnecessary because of a failure to support or communicate with the child will not be reversed unless clearly erroneous. *Id.*, 378 S.W.3d at 100. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* We defer to the trial court in making credibility determinations because the trial court is in a better position to judge the credibility of witnesses. *Id.* In cases involving minor children, a heavier burden is cast upon the court to utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the children's best interest; the appellate court has no such opportunity; we know of no case in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as one involving minor children. *Sanders v. Savage*, 2015 Ark. App. 461, 468 S.W.3d 795; *Ducharme v. Gregory*, 2014 Ark. App. 268, 435 S.W.3d 14.

Reanna does not dispute that she failed significantly to communicate with or provide

support for her children, as contemplated by Ark. Code Ann. § 9-9-207(a)(2). Her argument

centers on the trial court finding that her failures were "without justifiable cause." The statute

is written in the alternative, meaning that a finding of either unjustified failure to communicate

*or* unjustified failure to support is all that is required to dispense with the biological parent's

consent.

We first examine appellant's argument that the trial court clearly erred in finding that

she was without justifiable cause in her failure to communicate. Appellant argues that she was

of the belief that the trial court order denying her visitation was tantamount to an order not

to have any contact, justifying her lack of any communication with the children. The trial

court found differently, and we cannot say that this finding is clearly erroneous.

A failure to communicate without justifiable cause is one that is "voluntary, willful,

arbitrary, and without adequate excuse." *In re Adoption of Lybrand*, 329 Ark. 163, 169-70, 946

S.W.2d 946, 950 (1997). The issue of justifiable cause is factual, but one that is largely

determined on the basis of the credibility of the witnesses. *Martini v. Price*, 2015 Ark. App. 684,

476 S.W.3d 867. We give great weight to a trial judge's personal observations when the

welfare of young children is involved. *Id.*

The trial court's letter opinion recounted how Reanna unjustifiably failed to avail

herself of several methods of communication: "She made no phone calls to the children or

their father about their well-being. She sent no birthday or Christmas cards or letters or e-

mails to her children. She did not attend any school, church or sporting events involving her

children." The trial court was also influenced substantially by Reanna's failure to petition for

a review of the temporary order that suspended her visitation, where Reanna had a history of passing drug screens, claimed to be drug-free since December 2013, was capable of but did not work, and relied on her husband's income but did not ask him to give her the money she said she needed to file a petition. The trial court determined that this manifested a significant failure to communicate with the children "without justification."

We have upheld the trial court not requiring parental consent to adoption, even where the parent cannot visit the child but could make contact other ways. For example, in *Gordon v. Draper*, 2013 Ark. App. 352, at 6-7, 428 S.W.3d 543, 546, our court affirmed in spite of Gordon's claim that his imprisonment and a no-contact order prevented communication by holding that "although the no-contact order specifically preserved Gordon's right to ask for a hearing to obtain visitation, he neither requested a hearing over the sixteen-month period that followed nor appealed the entry of the no-contact order. . . . even while in prison, he can use the telephone anytime, send letters on a daily basis, and . . . .he could have requested a hearing on the visitation issue. Because Gordon did not utilize the resources available to him in prison, he cannot use his imprisonment as an excuse." There must be inquiry into whether the parent has utilized those resources at his or her command in continuing a close relationship with the child. *See In re Adoption of Titsworth*, 11 Ark. App. 197, 669 S.W.2d 8 (1984). In *Zgleszewski v. Zgleszewski*, 260 Ark. 629, 542 S.W.2d 765 (1976), the supreme court stated that even imprisonment of a parent does not completely toll the parent's responsibilities; contact may be made via cards, letters, and small gifts. In *Martini v. Price*, 2015 Ark. App. 684, 476 S.W.3d 867, our court affirmed the trial court's finding that dispensed with consent of the

natural father who was subject to a no-contact order with the mother and the children were allegedly too young to be able to independently communicate with their father.  The *Martini* opinion held that the trial court's finding that the failure to communicate was without justification was not clearly erroneous, given that there was no effort to send a single letter or card, no effort to institute legal intervention, and no effort to try to communicate with his children through an intermediary.  Reanna was not under a no-contact order with regard to Chris, nor was she under a no-contact order with regard to the children, in spite of her professed belief to the contrary.

Here, the trial court made distinct findings of fact that supported a finding of unjustifiable failure to communicate:

> [Reanna] had no contact whatsoever with her children, their father or their stepmother. She failed to help them financially even though she was not required to pay child support through an order of the Court.  She made no phone calls to the children or their father about their well-being.  She sent no birthday or Christmas cards or letters or e-mails to her children.  She did not attend any school, church or sporting events involving her children.
> During the time after the Amended Temporary Order, Reanna Rodgers testified she had a clean drug screen but did not petition for a review of visitation or custody.  She stated that she lapsed after this drug test in October 2013, but never received drug treatment at any facility.  She stated she met a man on Facebook, moved in with him, had his child, married him, and moved with him to her mother's house.  She never worked, even though she was capable of working, and stated she had no money to hire an attorney to file a petition.  She stated she did not need to work because her husband supported her with his income but she never requested he give her the money she stated she needed to file a petition. Reanna's mother and step-father encouraged her to hire an attorney many times.

The trial court found that appellant's concern was not with her four children because her "actions during the year following her loss of child custody demonstrated her lack of regard for her children's well-being and instead demonstrated her desire to move on with other

11

interests she obviously found to be more compelling." These factual findings were dependent in large part on the credibility of the witnesses and the weight of the evidence, and on these matters we give deference to the trial court's observations and determinations. The trial court in this case determined that Reanna's excuses were either not credible or not sufficient to constitute justifiable cause. The trial court's findings on this point are not clearly erroneous, and we are not left with a distinct and firm impression that a mistake was made.

Because we hold that the trial court did not clearly err with regard to failure to communicate, it is not necessary to address whether the trial court clearly erred concerning Reanna's failure to provide for the care and support of her children. We nonetheless hold that the trial court did not clearly err in finding that Reanna was not justified in this regard. Our supreme court has affirmatively stated that "a parent has a legal duty to support his minor children, regardless of the existence of a support order" and that the parent continues to have "both a legal and a moral duty to do so." *Fonken v. Fonken*, 334 Ark. 637, 642, 976 S.W.2d 637 (1998); *see also Storey v. Ward*, 258 Ark. 24, 26, 523 S.W.2d 387, 389 (1975); *Nason v. State Arkansas Child Support Enf't*, 55 Ark. App. 164, 165, 934 S.W.2d 228, 230 (1996); *Dangelo v. Neil*, 10 Ark. App. 119, 122, 661 S.W.2d 448, 450 (1983) (holding that a parent has the obligation to support a minor child, no request is necessary, and the parent's legal obligation is independent of statute). Reanna was aware that Arkansas law imposes a duty to provide support regardless of any court order and admittedly provided no support during the year preceding the petition to adopt. The trial court found that Reanna "failed to help them financially even though she was not required to pay child support through an order of the

SLIP OPINION

Court," that Destiny and Chris "took over the responsibilities of raising the children," and that Reanna never worked, although she was capable of working. The trial court in this case determined that Reanna's reasons for not providing for the care and support of her children were either not credible or not sufficient to equate to justification. We hold that the trial court did not clearly err in so deciding.

Affirmed.

GRUBER, J., agrees.

WHITEAKER, J., concurs.

**PHILLIP T. WITHEAKER, Judge, concurring.** I agree with the majority's decision that appellant Reanna Rodgers failed significantly and without justifiable cause to provide for the care and support of her children. *See* Ark. Code Ann. § 9-9-207(a)(2) (Repl. 2015). I therefore concur with the majority in that respect and agree that this appeal can be affirmed. I disagree, however, with the notion that Reanna failed, without justifiable cause, to communicate with her children. Instead, I believe that her failure to communicate was justifiable.

Regarding Reanna's failure to support her children, she testified at the adoption hearing that she understood, under Arkansas law, that she had a duty to provide support for her children, regardless of any child-support order. She acknowledged that she failed to do so prior to appellee Destiny Rodgers's petition for adoption. She likewise conceded that, despite the fact that she had not been ordered to pay child support, the order did not forbid her from sending birthday cards or Christmas presents. She agreed that she was able to work,

13

yet she did not do so, and she did not ask her current husband for money that she could have used to support her children.

Arkansas law has long held that, regardless of the existence of a court order of support, a parent has both a legal and moral duty to support her minor child. *Fonken v. Fonken*, 334 Ark. 637, 642, 976 S.W.2d 952, 955 (1998) (citing *McCall v. McCall*, 205 Ark. 1123, 1126, 172 S.W.2d 677, 678 (1943)); *see also Bass v. Bass*, 2011 Ark. App. 753, at 5, 387 S.W.3d 218, 222 (A parent has a legal and moral duty to support and educate her child and to provide the necessities of life even where the child has sufficient property to do so.) (citing *Lee v. Lee*, 95 Ark. App. 69, 233 S.W.3d 698 (2006)); *McGee v. McGee*, 100 Ark. App. 1, 6, 262 S.W.3d 622, 626 (2007) (Even in the absence of a court order requiring a parent to support his or her minor child, a parent continues to have a legal and moral duty to do so.). I therefore agree that Reanna had a duty to offer support to her children, and by her own admissions, she failed to do so without justifiable cause. On that basis, I agree to affirm the circuit court's decision.

I cannot agree, however, that Reanna failed significantly, and *without justifiable cause*, to communicate with her children. A failure to communicate "without justifiable cause" is "one that is 'voluntary, willful, arbitrary, and without adequate excuse.'" *Fox v. Nagle*, 2011 Ark. App. 178, at 12–13, 381 S.W.3d 900, 907. To determine whether Reanna failed to communicate "without justifiable cause," I believe it is important to examine the entirety of the court's admonition to Reanna and Chris at the September 2013 hearing on Chris's petition to modify the parties' custody arrangement:

> The petition of Chris Rodgers is granted. There will be absolutely no—now, listen to me, I want to make sure that you understand this, Mr. Rodgers. It sounds to

14

me like even though you had an order from the court saying what your visitation schedule was going to be, that you all decided on your own that you were going to change that. I want to make sure that you understand that you cannot do that anymore. You've asked the court now to make this decision and *it's the court's decision what happens to your children*. It does not have anything to do with your own decisions. Do you understand?

> *So when I say that* [*Reanna*] *is not to have any visitation at all with these children, I mean that she is not to have any visitation at all with these children*. So if I find out that you've sponsored that kind of visitation, then I'm going to hold you in contempt.

> Somebody has to take charge of the best interests of these children, and it doesn't sound like it's going to be you, Ms. Rodgers. And when you decide that your children are more important to you than methamphetamine, then you can certainly come back and you can ask the court to reverse this ruling and the court will certainly look at it. But until that day happens, *then there's not going to be even visitation with your children*.

(Emphasis added.)

At the March 2015 hearing on Destiny's adoption petition, Reanna testified that she understood the court's September 2013 order to mean that she was to have no contact with her children from the date of that order. She further explained that, in not communicating with her children, she believed she was obeying the court's orders to not see them. She said she was afraid that if she did try to see them, the court would take "further action" in taking her children away from her.

Moreover, from a colloquy on cross-examination by Reanna's counsel, it was apparent that Chris likewise understood this to be the case:

COUNSEL: And was that also the order that ordered Ms. Rodgers [to] have no visitation with the children?

CHRIS: Yes. [Judge] Hearnsberger ordered no visitation.

COUNSEL: Okay.

CHRIS:        But that does not keep birthday cards from coming in or anything.

COUNSEL:    Well, did you think that Ms. Rodgers should have contact with your children if the court ordered her not to have any visitation with the children?

CHRIS:        Well, as soon as she had you as a lawyer, there's nothing that can keep you from sending—

COUNSEL:    No, that's a yes or no question, Mr. Rodgers. Do you think during all this period of time, when there was a court order that she not have any visitation, that she should have had contact with your children?

CHRIS:        As soon as she filed a clean drug test, then she could appeal for that.

COUNSEL:    Well, you're not answering the question, Mr. Rodgers. I'm asking, do you think that she should have had contact even though this court ordered her not to?

CHRIS:        No, I don't think she should have [had] contact.

I thus cannot conclude that Reanna's failure to communicate was without justifiable cause or an adequate excuse. She had been explicitly informed and ordered by the circuit court that she was to have no visitation with her children. The court went so far as to threaten Chris with contempt if he attempted to allow Reanna to see the children. In light of the court's stern and explicit order that Reanna not have visitation with her children, I am at a loss to understand how Reanna was "without justifiable cause" in not contacting her children. I therefore cannot agree with this portion of the majority's decision. Because I am able to agree with its conclusions regarding Reanna's lack of support, however, I concur in the opinion.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellant.
*Steve Westerfield*, for appellee.