
# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-15-66

JOSHUA M. SANDERS

APPELLANT

V.

TYLER SAVAGE AND JANICE SAVAGE

APPELLEES

Opinion Delivered September 9, 2015

APPEAL FROM THE BOONE COUNTY CIRCUIT COURT
[No. 05PR-14-4]

HONORABLE GARY B. ISBELL, JUDGE

AFFIRMED

## LARRY D. VAUGHT, Judge

Appellant Joshua Sanders appeals a decree of the Boone County Circuit Court granting appellees Tyler and Janice Savage's petition for adoption of Sanders's two minor children. Joshua argues on appeal that the circuit court lacked jurisdiction over the case because Janice and Tyler failed to strictly comply with the adoption code, and he challenges the circuit court's findings regarding consent and best interest of the children. We affirm.

Joshua and Janice were in a relationship between 2007 and 2009. Two children were born during the relationship. J.C.H. was born October 14, 2007, and J.L.H. was born September 9, 2009. Joshua was determined to be the biological father of both children. The relationship ceased in 2009, and Janice maintained custody of the children. In 2010, Janice began a relationship with Tyler, and they married in March 2013. Janice and Tyler filed a petition on January 8, 2014, to allow Tyler to adopt his stepchildren and claimed that Joshua's consent was not required. Joshua denied the allegations and claimed that he had

been involved in the children's lives, had faithfully paid child support, and had regular visitations with the children until March 2013, when Janice refused to allow him to have contact with the children. Joshua filed a petition for visitation and name change in the Boone County Circuit Court in September 2013.[1]

At the adoption hearing on September 14, 2014, Joshua testified that he was having daily contact with his children and paid court-ordered child support until 2012, at which time he only saw them about once a month at his parents' house. He testified that his contact with the children was mainly through the efforts of his mother, who had passed away in January 2014. Joshua acknowledged that he never went to the court to obtain a visitation schedule but only relied on his mother because Janice communicated with his mother. Joshua testified that he gave up attempting to see his children. Joshua lived only three miles away from Janice at one time but never went to her house, choosing only to make phone calls because he did not want it to be deemed harassment. Joshua saw his children on Christmas Day 2012 at his parents' house, where he also lived at the time. He testified that the last time he had contact with his children was also at his parents' house in late January or February 2013.

Although Joshua was aware that Janice had married Tyler in 2013, he did not attempt to arrange visitation because he thought she had moved to Kentucky. He testified that it was

___

[1] There is a motion to consolidate the visitation and the adoption cases in the addendum. However, there is no order of consolidation in either the record or the addendum. The court's ruling from the bench denied his petition for visitation and name change. The final order of adoption does not mention the visitation case, and it is not before us.

SLIP OPINION

not until he heard she had moved back to Boone County during the summer of 2013 that he filed a petition for visitation in September 2013.

Joshua stated that his younger son was a stranger to him and that his visits had been sporadic because Janice would not let him see the children. He did not send his children birthday cards or gifts and recalled giving a small Christmas gift on only two occasions. Joshua testified that he has never been to a parent-teacher conference or made contact with their schools to ask for a schedule.

Janice testified at the hearing that she and Joshua had been in an on-and-off relationship and lived together from November 2008 to February 2009. She moved out of the home because she was scared of Joshua, testifying that he occasionally drank to excess and used drugs. She found methamphetamine paraphernalia in the home. Janice went into labor ten weeks early with the second child and was hospitalized, but Joshua never reached out to her, nor was he present for the child's birth. She testified that Joshua had not had regular contact with the children since September 2011, when he came to the younger child's birthday party. Janice testified that since 2011, Joshua's visitation was supervised. She admitted that she denied visitation from 2010 until the time of trial because of his behavior. In addition, she stated that she had expressed concern to Joshua's mother that she did not want him to know where she lived, but Joshua's mother knew where she lived at all times. Janice acknowledged that he did see the children on Christmas in 2010, 2011, and 2012. The last visitation she scheduled with Joshua's parents was in March 2013 for about twenty minutes at a park, and Joshua was not present at that visitation. Prior to that visit, the last contact was a few months beforehand, and Janice testified that only Joshua's mother was

present. Janice testified that her older son never mentioned Joshua and that the younger son did not know who he was. Janice testified that in seven years he had only given the children two water guns. She gave the t-ball schedule to Joshua, but he never went to a game. She stated that he never asked about doctor's visits, medical bills, activities, or school functions.

With respect to Tyler, Janice testified that he was an amazing father figure and was always there for the children. She explained that when he worked out of state, he spoke to the children on the phone daily and helped them with their homework. Janice recorded their games because he did not want to miss them, and he talked to the children after the games. She stated that Tyler had been the most consistent male figure in the children's lives and had raised them. She said that they saw Tyler as a father figure and were extremely happy when he was around. The children called him dad, daddy, or Ty.

Tyler testified that he had been in a relationship with Janice since early 2010, and he met the children that year. He stated that he and Janice married in March 2013. He worked out of state in the gas-pipeline field as a supervisor but was home several months a year and for holidays. He said that since they had been married, Janice and the children had lived with him during the summers where he worked. The boys had rooms in his apartment where he lived when he was away for work. He traveled for work because he could not make the same kind of money in Boone County. He stated that his role as their father figure gradually increased. While he was away, he communicated with Janice daily through phone calls, texts, and FaceTime. He stated that he had always talked to the boys on the phone, and when he and Janice got iPhones, he FaceTimed the children daily. He called out spelling words over the phone. When he was home, he attended their school and extra-curricular activities. He

4

SLIP OPINION

testified that most of the time the children called him "daddy." He testified about the personalities of each of the children and how he tried to teach them everything his father had passed down to him.

Tyler testified that during the time he had been with Janice, he had never known Joshua to call or visit the home where the children lived or to send birthday or Christmas gifts. He said that Joshua had never contacted him about seeing the children. He testified that the last time he knew that Joshua visited the children was at the younger child's birthday party in 2011.

In the final decree of adoption, the court found (1) that Joshus had erroneously and wrongfully withheld consent to the adoption and that he failed significantly without justifiable cause to communicate with the minor children for more than one year, and (2) that the adoption was in the best interests of the children. This appeal followed.

In adoption proceedings, we review the record de novo, but we will not reverse the lower court's decision unless it is clearly erroneous or against a preponderance of the evidence, after giving due regard to its superior opportunity to determine the credibility of the witnesses. *Ducharme v. Gregory*, 2014 Ark. App. 268, at 6, 435 S.W.3d 14, 18. We have said that in cases involving minor children a heavier burden is cast upon the court to utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the children's best interest; that the appellate court has no such opportunity; and that we know of no case in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as one involving minor children. *Id.*, 435 S.W.3d at 18. When the issue is one of terminating parental rights, the appellate courts have referred to

the "heavy burden" upon the party seeking to terminate the relationship. *Id.*, 435 S.W.3d at 18. Adoption proceedings are in derogation of the natural rights of parents, and statutes permitting such are to be construed in a light favoring continuation of the rights of natural parents. *Id.*, 435 S.W.3d at 18.

For his first two arguments, Joshua argues that the circuit court lacked jurisdiction because Janice and Tyler failed to strictly comply with the adoption code. Arkansas Code Annotated section 9-9-207(a)(2) states that the consent to adoption is not required of "a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree." Ark. Code Ann. § 9-9-207(a)(2) (Repl. 2009). The jurisdiction of the probate court to order adoption requires strict statutory compliance, and failure to strictly comply denies the probate court jurisdiction. *Swaffar v. Swaffar*, 309 Ark. 73, 79, 827 S.W.2d 140, 143 (1992).

Joshua argues that the petition for adoption filed by Janice and Tyler was defective because it was filed before the right to adoption without Joshua's consent had accrued. The petition for adoption was filed in January 2014, and he claims to have seen his children in January or February 2013. This argument is without merit because the one-year period may be any one-year period, not merely the one-year period preceding the filing of the petition for adoption. *In re Adoption of A.M.C.*, 368 Ark. 369, 246 S.W.3d 426 (2007). Further, "failed significantly" does not mean "failed totally." *Pender v. McKee*, 266 Ark. 18, 28, 582 S.W.2d 929, 934 (1979). It only means that the failure must be significant, as contrasted with an insignificant failure. *Id.*, 582 S.W.2d at 934. It denotes a failure that is meaningful or

important. *Id.*, 582 S.W.2d at 934. Based on these facts, Joshua's argument that the circuit court lacked jurisdiction is without merit.

Joshua next argues that we should reverse because the circuit court's finding that he failed significantly without justifiable cause to communicate with his children for more than one year was clearly erroneous. He contends that his failure to communicate with his children was justified, and as such, his consent was required.

Adoption statutes are strictly construed, and a person who wishes to adopt a child must prove that consent is unnecessary by clear and convincing evidence. *Racine v. Nelson*, 2011 Ark. 50, at 11, 378 S.W.3d 93, 100. A circuit court's finding that consent is unnecessary because of a failure to support or communicate with the child will not be reversed unless clearly erroneous. *Id.*, 378 S.W.3d at 100. There is a heavy burden placed upon the party seeking to adopt a child, without the consent of a natural parent, to prove the failure to communicate or the failure to support by clear and convincing evidence. *Harper v. Caskin*, 265 Ark. 558, 580 S.W.2d 176 (1979).

Joshua compares his situation to that of the biological mother in *Cassat v. Hennis*, 74 Ark. App. 226, 45 S.W.3d 866 (2001). In that stepparent-adoption case, we affirmed the trial court's decision that the biological mother's consent was required even though she had not seen the children in over a year. In *Cassat*, the court upheld the finding that the mother's consent was necessary because she made phone calls and sent weekly letters and occasional packages. There was also evidence the father thwarted her efforts to see the children. He intentionally changed his phone number, had it unlisted, and refused to give it to the mother, causing her to send calling cards for her children to call her. He refused to stop while he was

traveling through Texas to let her see the children, even though he was passing by where the mother was stationed. When she was available to visit the children, he would not let her.

The facts of this case are distinguishable. There was evidence that Joshua did not make significant efforts to see his children. By his own testimony, he admitted that he gave up seeing his children in 2012 and that his visits were sporadic. He acknowledged that his younger child was a stranger to him. He testified that the contact that he did have was a result of his mother's efforts. At most, Joshua saw his children only one time in the year before the petition for adoption was filed. Joshua never sent birthday cards or gifts and had only twice them given a small Christmas gift. Although Janice admitted she denied visitation since 2010, Joshua did not seek help from the court until September 2013. In addition, Janice never changed her phone number, and Joshua's mother knew where Janice lived.

In its ruling from the bench, the circuit court found that Janice had not unreasonably prevented contact with the children, but that Joshua did that all by himself. The court said, "He never prioritized the children in his life. He's never made any measurably significant effort to maintain contact, to emotionally support the children, or to discharge the expectations of a father." Joshua testified that he gave up. The circuit court is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *In re Adoption of M.K.C.*, 2009 Ark. 114, 313 S.W.3d 513. The circuit court gave weight to the appellees' version of the facts that Joshua unjustifiably failed to communicate and to support the children throughout their lives. Based on these facts, we hold that the trial court's finding that his consent was unnecessary because he failed to significantly and without justifiable cause communicate with his children for more than one year was not clearly erroneous.

Because the court found that Joshua's consent was not required under section 9-9-207(A)(2), we need not address the question of whether Joshua unreasonably withheld his consent.

Joshua's final argument challenges the circuit court's best-interest determination. A circuit court's decision regarding the best interest of a child to be adopted will not be reversed unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witness. *Racine*, 2011 Ark. 50, at 17, 378 S.W.3d at 103. We give great weight to a circuit court's personal observations when the welfare of young children is involved. *Id.*, 378 S.W.3d at 103.

Joshua had sporadic contact, which was always supervised, with his children since 2012, and he eventually quit trying to have contact with his children. It was not until September 2013 that he filed a petition for visitation. The circuit court's ruling noted that he never made his children a priority, never made a significant effort to maintain contact or to emotionally support the children, and failed to discharge the expectations of a father. The evidence supports these findings. The record shows that Tyler has been a regular part of the children's lives since 2010 and married their mother in March 2013. He has been the only father figure in their lives. He provides for them and is actively involved in their lives even when he is not physically present because his job takes him out of state. Taken as a whole, and giving deference to the trial court to assess the credibility of the witnesses, we cannot say that the trial court's determination of best interests was clearly against the preponderance of the evidence. Therefore, we affirm.

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

*Depper Legal Services, PLC*, by: *Robert L. Depper III*, for appellant.

*Phillip A. Moon*, for appellees.