SLIP OPINION

Cite as 2017 Ark. App. 569

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV–17–67

| | |
|---|---|
| LAUREN ASHLEY CHILDRESS<br>APPELLANT<br><br>V.<br><br>TAMI RACHELLE BRADEN<br>APPELLEE | **Opinion Delivered:** November 1, 2017<br><br>APPEAL FROM THE CONWAY COUNTY CIRCUIT COURT<br>[NO. 15PR–16–13]<br><br>HONORABLE DAVID H. MCCORMICK, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Lauren Ashley Childress appeals the Conway County Circuit Court order granting the adoption petition of Tami Rachelle Braden. On appeal, Lauren argues that the circuit court erred in finding her consent to the adoption of her son D.B. was not required because she had failed significantly and without justifiable cause to (1) communicate with D.B. and (2) provide child support pursuant to a court order. She also argues that Tami failed to prove that the adoption was in D.B.'s best interest. We affirm.

D.B. was born on December 2, 2009, to Lauren and Robert Braden.[1] On May 30, 2012, Robert filed a complaint for paternity in the Perry County Circuit Court seeking sole custody of D.B. The affidavit of service reflects that Robert sent the complaint and summons

---

[1]Lauren and Robert never married.

by certified mail to Lauren and Lauren's mother, Laurel Childress, at Laurel's address. Delivery was not restricted to Lauren, and Laurel signed the return receipt.

On June 4, 2012, Robert filed an ex parte petition for an emergency temporary order. In the affidavit attached to the petition, Robert reported that Lauren suffered from a drug addiction and had appeared to be under the influence of drugs during a visitation with D.B. On the same day the petition was filed, the court entered an ex parte emergency temporary order, granting Robert temporary custody of D.B. On June 5, 2012, Robert's counsel sent a copy of the June 4 order to Lauren's address by regular mail with a letter notifying her of a June 19, 2012 hearing.

On June 19, 2012, the court held a hearing. On that same day, the court entered a written order noting that Lauren had failed to appear at the hearing despite having received notice. The court granted temporary custody of D.B. to Robert and supervised visitation to Lauren. Specifically, the court ordered that Lauren's visits with D.B. would be at Robert's discretion. The court further ordered that Lauren not be left alone with D.B.

On October 15, 2012, Lauren, through counsel, filed a counterclaim for paternity. She asked the court to award her custody of D.B., or in the alternative, specific visitation. On December 18, 2012, Robert's counsel sent Lauren's counsel a letter notifying him of a final hearing on January 2, 2013. On December 21, 2012, Lauren's attorney filed a motion to withdraw as counsel, stating that Lauren had indicated she did not desire legal representation.

On January 2, 2013, the Perry County Circuit Court held a final hearing, and on January 4, 2013, the court entered a written order granting permanent and full custody of

D.B. to Robert. The court ordered Lauren to pay Robert $26 a week in child support through the clerk of the court. The court further ordered Lauren to pay Robert $2,750 in attorney's fees. In the written order, the court found that Lauren had failed to appear at the hearing despite having received notice. Specifically, the court noted that Lauren

> has failed to appear on three (3) different occasions regarding the custody of the child after notice was given to her. The Court further finds and orders that the issue of visitation with the child by [Lauren] is reserved by the Court pending a Petition of [Lauren] requesting visitation and any order which may be issued in the future regarding the same.

Three years later, on January 15, 2016, Lauren filed a motion to establish visitation.

On February 8, 2016, Tami, Robert's wife, filed the instant petition for adoption of D.B. in the Conway County Circuit Court. She alleged that since the January 4, 2013 order issued in Perry County, Lauren had not paid child support or visited D.B. Thus, Tami asserted that Lauren's consent to the adoption was not required.

On June 10, 2016, the court held a hearing on the adoption petition. Robert testified that he filed for emergency custody of D.B. in 2012 because Lauren had a drug addiction, and he believed she was a danger to the child. He stated that Lauren had abused prescription drugs and had also used methamphetamine. He explained that before the final custody hearing, Lauren visited D.B. on a few occasions; however, he testified that Lauren often did not show for visitations or he had to cancel them because Lauren appeared to be under the influence of drugs.

Robert testified that since he had obtained permanent, full custody of D.B. in January 2013, D.B. had not seen Lauren. He admitted that Lauren sporadically called him and asked to visit D.B. but that he began blocking her calls in April 2013 after Lauren had become

aggressive and threatened to kill him and D.B. He stated that he blocked every phone number Lauren used to contact him. He also blocked Lauren on Facebook. He recalled that Lauren had sent his wife, Tami, a Facebook message in October 2013, asking Tami to speak to Robert about allowing D.B. to visit. He testified that Tami showed him the message but neither he nor Tami responded. Robert also recalled that in January 2016, Lauren sent several emails to his business account, notifying him of her contact information, requesting to visit D.B., and asking where she should send her child-support payments. However, he did not respond to the emails. Tami responded on his behalf and asked Lauren to refrain from sending personal emails to Robert's business account. Robert testified that Lauren did not begin paying him child support until 2016.

Robert explained that his relationship with Tami began sometime in 2013 and that they began living together in December 2015. They married on January 8, 2016. He testified that D.B. had a relationship with Lauren's parents but that D.B. was not allowed at their house if Lauren was present.

Tami testified that she had been in a relationship with Robert for approximately three and a half years and that she has a mother-son relationship with D.B. She explained that she has two children from different relationships and that they are "best friends" with D.B. Tami stated that since her relationship with Robert began, Lauren had not sent any cards or gifts to D.B. She believed that Lauren's reentering D.B.'s life would be detrimental to the child. She acknowledged the bond that D.B. has with Lauren's parents and stated that she planned to allow that relationship to continue. However, she also acknowledged that Robert's relationship with Lauren's parents had recently declined due to the current

proceedings. Tami recalled the Facebook message that Lauren sent to her in October 2013 and testified that she did not respond. On cross-examination, Tami admitted that her relationship with Robert began in December 2012, before she officially divorced her ex-husband in 2013.

Lauren testified that before Robert obtained full custody of D.B., she was D.B.'s primary caregiver. She admitted that she had abused drugs in the past but testified that she and Robert had abused drugs together. As to the Perry County custody proceedings, she denied receiving service of the pleadings. She stated that her parents received service of the pleadings. She learned about the final custody hearing from her parents after the fact. She testified that she did not receive a copy of the final custody order until she obtained counsel in the current proceedings. Thus, she did not pay child support or petition the court for visitation until 2016. She made her first child-support payment in March 2016 and also began making payments toward her arrears. Lauren explained that she had tried to contact Robert to visit D.B., but he blocked her calls and did not respond to her text messages. She did not know Robert's physical address to send letters. She testified that she bought D.B. gifts for special occasions and that her mother gave the gifts to D.B. on her behalf. Specifically, on cross-examination, Lauren stated that she spent approximately $200 on clothing and gifts for D.B. over the past three and a half years.

Lauren explained that she is currently employed as a dental assistant and travels to nursing-home facilities to perform dental work on patients. Her employment began in April 2016. She further testified that she is sober and that she regularly attends Alcoholic Anonymous meetings. She stated that she completed a parenting class in March 2016 and

that she attends church. She testified that she loves D.B. and that D.B. has a close relationship with her family. She worried that the adoption would extinguish D.B.'s relationship with her parents.

Lauren's mother, Laurel Childress, testified that since Tami had filed the adoption petition, Robert had barred D.B. from her house. Prior to the filing of the petition, she saw D.B. every other week. She stated that Lauren provided gifts and that she transferred them to D.B. She did not tell anyone the gifts were from Lauren. She recalled an incident where Lauren gave D.B. toys, and when Robert learned the toys had come from Lauren, he prohibited D.B. from keeping them. She further testified that Lauren had improved her life and that ending her relationship with D.B. would be detrimental to the child.

Johnny Childress, Lauren's father, testified that his relationship with Robert and D.B. had deteriorated since Tami filed the adoption petition. Since the petition was filed, he could only see D.B. at Robert and Tami's house because D.B. is not allowed at his house. However, he believed Robert would always allow him and his wife to see D.B.

At the conclusion of the hearing, the court took the matter under advisement. On October 3, 2016, the court entered a written order granting Tami's petition for adoption. In the order, the court found that Lauren's consent to the adoption was not required because Lauren failed significantly and without justifiable cause to communicate with and to support D.B. for a period of at least one year. Specifically, as to the support, the court found that Lauren had completely failed to pay child support in 2013, 2014, and 2015 as required by the Perry County order. The court noted Lauren's testimony that she provided gifts and clothes but found that the gifts did not constitute support of the child in any meaningful

degree. As to her failure to communicate with D.B., the court found that after the entry of the final custody order, Lauren failed to have visitation rights restored as required by the Perry County order. The court specifically discredited Lauren's testimony that she did not know about the Perry County order. The court also found that it was in D.B.'s best interest to grant the petition. In making the best-interest determination, the court considered Lauren's lifestyle over the majority of D.B.'s life, the length of time since Lauren had contact with D.B., Lauren's failure to support D.B., and Tami and D.B.'s relationship.

Lauren timely appealed the order to this court. On appeal, she argues that the circuit court erred in finding her consent to the adoption was not required because she failed significantly and without justifiable cause to (1) communicate with D.B. and (2) provide child support. She also argues that the circuit court erred in finding that it was in D.B.'s best interest to grant Tami's petition for adoption.

We first address Lauren's argument that the circuit court erred in finding that her consent to the adoption was not required. Adoption statutes are strictly construed, and a person who wishes to adopt a child must prove that consent is unnecessary by clear and convincing evidence. *Racine v. Nelson*, 2011 Ark. 50, 378 S.W.3d 93. A circuit court's finding that consent is unnecessary because of a failure to support or communicate with the child will not be reversed unless clearly erroneous. *Id.* There is a heavy burden placed on the party seeking to adopt a child without the consent of a natural parent to prove the failure to communicate or the failure to support by clear and convincing evidence. *Id.*

Pursuant to Arkansas Code Annotated section 9-9-207(a)(2) (Repl. 2015), a parent's consent to adoption is not required of

a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree.

"Failed significantly" certainly does not mean "failed totally." *Racine*, 2011 Ark. 50, at 13, 378 S.W.3d at 100 (citing *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979)). It only means that the failure must be significant, as contrasted with an insignificant failure. *Id.* It denotes a failure that is meaningful or important. *Id.* Also important to note is that the one-year period may be any one-year period, not merely the one-year period preceding the filing of the petition for adoption. *In re Adoption of A.M.C.*, 368 Ark. 369, 246 S.W.3d 426 (2007).

In this case, Lauren argues that the circuit court erred in finding that she failed significantly and without justifiable cause to communicate with and to support D.B. for a period of one year. We first address Lauren's support argument.

Lauren argues that her failure to pay child support was justified because she had no knowledge of the Perry County order requiring her to pay child support. She asserts that Robert failed to properly serve her with the original complaint for paternity and that she did not receive notification of the final hearing. She further argues that she attempted to provide other types of support to D.B. but Robert refused it. She also points out that when she finally received a copy of the Perry County order, she began to pay child support.

We hold that the circuit court did not clearly err in finding that Lauren's consent was not required because she failed to support D.B. from 2013 through 2015. It is undisputed that the Perry County Circuit Court entered a child-support order in January 2013 and that Lauren did not pay child support until 2016. Even though Lauren maintains

that she did not receive proper notice of the proceedings and had no knowledge of the child-support order, the circuit court specifically discredited her testimony. Our supreme court has repeatedly stated that the circuit court is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *Racine*, 2011 Ark. 50, 378 S.W.3d 93. Moreover, the circuit court found that Lauren's gifts to D.B. did not constitute support in a meaningful degree. Lauren testified that her gifts from 2013 through 2015 totaled only $200. Given this evidence and the circuit court's credibility findings, we hold that the circuit court did not clearly err in finding that Lauren's consent to the adoption was not required because she failed to support D.B. for more than one year. Because we hold that Lauren's consent was not required for her failure to pay support, we need not discuss Lauren's argument concerning her failure to communicate.

Lauren further argues that even if her consent to the adoption was not required, the circuit court erred in finding that the adoption was in D.B.'s best interest. She points out that in making the best-interest determination, the circuit court considered her lifestyle, but there was no evidence presented at the hearing that she was currently engaged in a harmful lifestyle. She further asserts that the court considered her failure to communicate with and to support D.B., but the evidence showed that Tami and Robert thwarted her efforts. She also argues that the adoption would be detrimental to D.B.'s relationship with her parents, with whom he has a strong bond. She further asserts that the mere fact that D.B. has a good relationship with Tami is insufficient to warrant the adoption.

A circuit court's decision regarding the best interest of a child to be adopted will not be reversed unless it is clearly against the preponderance of the evidence, giving due regard

to the opportunity and superior position of the circuit court to judge the credibility of the witnesses. *Sanders v. Savage*, 2015 Ark. App. 461, 468 S.W.3d 795. We give great weight to a circuit court's personal observations when the welfare of young children is involved. *Id.*

We find Lauren's arguments unpersuasive and hold that the circuit court did not err in finding that it was in D.B.'s best interest to grant Tami's adoption petition. The evidence at the hearing showed that Lauren had not participated in more than three years of D.B.'s six-year life. Further, both Tami and Robert testified that they wanted to maintain D.B.'s relationship with Lauren's parents, and Lauren's father testified that he could see D.B. anytime as long as he went to Robert and Tami's house. Moreover, the court did not grant the adoption merely because D.B. has a good relationship with Tami. The court considered Lauren's actions over the past three years in conjunction with D.B.'s relationship with Tami. Taken as a whole, and giving deference to the circuit court to assess the credibility of the witnesses, we cannot say that the circuit court's determination of best interest was clearly against the preponderance of the evidence. Accordingly, we affirm the circuit court's granting of the adoption petition.

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*Kamps & Stotts, PLLC*, by: *Adrienne M. Griffis*, for appellant.

*Wankum Law Firm*, by: *Jeff Wankum*, for appellee.