LARRY D. VAUGHT, Judge
Jonathan Eric Swaite appeals from the final decree entered by the Garland County Circuit Court granting the petition of Tim and Carol Steele to adopt Jonathan's two minor children. On appeal, Jonathan argues that the circuit court clearly erred in finding that his consent was unnecessary for the adoption and that adoption was in the best interest of the children. We affirm.
Jonathan has two children: JS (born April 15, 2014) and DS (born March 6, 2015). Their mother is Kala Dawn Steele. Kala's father is Tim Steele, and Carol Steele is Kala's stepmother. In June 2015, Tim and Carol were granted guardianship of JS and DS due to Jonathan's and Kala's drug problems.
More than two years later, on August 14, 2017, Tim and Carol filed a petition to adopt JS and DS. The Steeles alleged that consent to adoption was not required from either Jonathan or Kala because they had failed to support or communicate with JS and DS for at least one year. The Steeles also alleged that adoption was in the children's best interest.
*519 A hearing on the adoption petition was held on November 14, 2017. The Steeles testified that since June 2015, they had been the guardians of JS and DS and that neither Jonathan nor Kala had provided support for the children despite each having been ordered by the court to pay monthly child support of $65. The Steeles testified that neither parent had sent clothing, cards, gifts, or diapers since June 2015. The Steeles stated that Jonathan and Kala had used food stamps a few times to purchase groceries for their children around March 2016.
Carol testified that in 2015, Jonathan and Kala were awarded visitation twice a week and that they inconsistently exercised visitation until April 2016. Carol stated that since June 2016, Jonathan had not seen the children and had not called them. Tim stated that his and Carol's phone numbers had not changed in twenty years. Tim also testified that while he and Carol had moved in February 2017, the postal service forwarded their mail.
Carol further testified that she, Tim, and the boys live in a 3000-square-foot house that has three bedrooms, two and a half baths, and a pool in the backyard. She stated that the children are on Tim's medical insurance, that she takes them to the doctor, and that their immunizations are current. Lastly, Carol testified that she and Tim desired to adopt the children and that they fully understood the responsibility of adopting them.
Jonathan testified that around 2015 he and Kala had no place to live, had no jobs, and were addicted to drugs, so they asked the Steeles to care for JS and DS. Jonathan stated that he had been incarcerated for a drug-related offense for a few months, released for a couple of weeks, and reincarcerated for a year and a half. He was incarcerated at the time of the hearing. He stated that he expected to be released in eighteen days; he had a job in construction and a truck waiting for him upon his release; he planned to live with his mother; and drugs were no longer a problem for him.
Jonathan conceded that he had not paid child support as ordered but that he was willing to pay support and child-support arrearages. He stated that he was unable to exercise visitation with JS and DS because the Steeles would not permit it. He said that he was unable to have phone visitation with the children because he broke his phone and he lost the Steeles' numbers. He said that he never tried to send letters or cards to his children because he was told that the Steeles had moved, and he did not have their new address. Finally, Jonathan testified that he did not consent to the adoption and that he wanted to continue to be the children's father.
Kala testified that she and Jonathan had drug problems. She stated that she turned herself in to the authorities on June 1, 2017, and she was still in custody. She conceded that she had not paid support to the Steeles as ordered. She further stated that she had talked to the Steeles approximately three weeks before the hearing and that their phone numbers had not changed.
At the conclusion of the hearing, the circuit court orally granted the adoption. On November 20, 2017, the circuit court entered a decree of adoption finding
3. The [Steeles] proved, by clear and convincing evidence, that [Jonathan and Kala] failed significantly and without justifiable cause to provide for the care and support of the minor children as required by law or judicial decree for a period in excess of one year. Additionally, both [Jonathan and Kala's] contact with the minor children was very limited for a period in excess of one year. Although *520 [Jonathan and Kala] did not consent to the adoption; their consent was not required due to the facts and evidence presented.
The court further found that the Steeles had been awarded guardianship of the children in June 2015, they had been in the Steeles' care since that time, and the Steeles were fit parents. Lastly, the court found that adoption was in the best interest of the children because the Steeles had cared for them for over two years, they were the only "true parents" the children had known, the Steeles had taken full responsibility for the children, they understood the meaning of adoption, and they had the means and desire to provide the care and support the children need. Jonathan filed a timely notice of appeal from the adoption decree.[1]
We review adoption proceedings de novo on the record. Newkirk v. Hankins , 2016 Ark. App. 186, at 8, 486 S.W.3d 827, 832. Adoption statutes are strictly construed, and a person wishing to adopt a child without the consent of the parent must prove, by clear and convincing evidence, that consent is unnecessary. Id. , 486 S.W.3d at 832. A circuit court's finding that consent is unnecessary due to a failure to support or communicate with the child will not be reversed unless clearly erroneous. Id. , 486 S.W.3d at 832. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. , 486 S.W.3d at 832. In cases involving minor children, the circuit court must utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the children's best interest. Id. at 8-9, 486 S.W.3d at 832. Because the appellate court has no such opportunity, the superior position, ability, and opportunity of the circuit court to observe the parties are afforded their greatest weight in cases involving minor children. Id. at 9, 486 S.W.3d at 832-33.
As set forth above, the circuit court found that Jonathan's consent to the adoption of JS and DS was unnecessary. One reason is that it found that Jonathan had failed significantly and without justifiable cause to provide for the care and support of the children for a period in excess of one year. Jonathan argues that this finding is clearly erroneous because he provided "some support" when he was out of prison and was unable to provide support when he was in prison.
Pursuant to Arkansas Code Annotated section 9-9-207(a)(2) (Repl. 2015), a parent's consent to adoption is not required of
a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree.
"Failed significantly" certainly does not mean "failed totally." Childress v. Braden , 2017 Ark. App. 569, at 8, 532 S.W.3d 130, 135 (citations omitted). It means only that the failure must be significant, as contrasted with an insignificant failure. Id. , 532 S.W.3d at 135. It denotes a failure that is meaningful or important. Id. , 532 S.W.3d at 135.
Carol and Tim testified that Jonathan had not paid any child support for more than two years despite being ordered to do so as part of the June 2015 guardianship proceeding. Jonathan conceded this point at the hearing. This evidence supports the *521 circuit court's finding that Jonathan's consent to adoption was unnecessary based on his failure to pay support for at least one year. Id. at 8-9, 532 S.W.3d at 134 (affirming the circuit court's finding that the appellant's consent to adoption was not necessary because the evidence showed that she did not pay court-ordered support for three years).
While Jonathan argues that he provided "some support," the only evidence of support was that on two or three occasions, he used food stamps to purchase food that he gave to the Steeles. This evidence does not constitute support of the children from June 2015 to August 2017 in any meaningful degree. Id. at 6-7, 532 S.W.3d at 134 (holding that gifts and clothing purchased by the appellant for her child from 2013 through 2015-totaling $200-did not constitute support of the child). Moreover, the last time Jonathan gave food to the Steeles was in March 2016, more than one year before the Steeles filed the petition to adopt the children.
Jonathan also argues that he could not pay child support because he was imprisoned during the case. In Gordon v. Draper , 2013 Ark. App. 352, at 7, 428 S.W.3d 543, 546, the circuit court found that the appellant's consent to adoption was unnecessary based on his failure to pay support for eighteen months despite being imprisoned for ten of those months. We affirmed, holding that the failure to pay support was unjustifiable. Id. , 428 S.W.3d at 546 ; see also In re Adoption of A.M.C. , 368 Ark. 369, 378, 246 S.W.3d 426, 432 (2007) (affirming circuit court's finding that consent to adoption was unnecessary based on his unjustifiable failure to pay support when the evidence showed that the appellant failed to pay child support for nineteen months and was incarcerated for twelve of those months); Courtney v. Ward , 2012 Ark. App. 148, at 15-16, 391 S.W.3d 686, 695 (affirming circuit court's finding that consent to adoption was unnecessary based on his unjustifiable failure to pay support when the evidence showed that the appellant failed to pay child support for two years and was incarcerated for fifteen months of that time). Similarly, Jonathan admittedly failed to pay child support to JS and DS for twenty-seven months. Although he was imprisoned for approximately twenty-one months during that time, there is no evidence in this record that he made or even attempted to make support payments in or out of prison.
Therefore, we affirm the circuit court's finding that Jonathan significantly and without justifiable cause failed to pay court-ordered child support for at least one year and, accordingly, that his consent to adoption was not necessary. Based on this holding, we need not discuss Jonathan's argument concerning his failure to communicate. Childress , 2017 Ark. App. 569, at 9, 532 S.W.3d at 136.
Jonathan's final argument is that the circuit court erred in finding that adoption was in the best interest of JS and DS. He contends that he has a loving relationship with JS and DS, he never abused or neglected them, and he had improved his life and his parenting skills while in prison.
A circuit court's decision regarding the best interest of a child to be adopted will not be reversed unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witnesses. Id. at 9-10, 532 S.W.3d at 136. We give great weight to a circuit court's personal observations when the welfare of young children is involved. Id. at 10, 532 S.W.3d at 136.
In the case at bar, the Steeles have had custody of JS and DS since June 2015-when *522 JS was one year old and DS was three months old. At the time of the adoption hearing, JS was three and a half, and DS was two and a half. These facts support the circuit court's finding that the Steeles had cared for the children for over two years and were the only "true parents" JS and DS have known. The guardianship was necessary because Jonathan was addicted to drugs and was unable to care for his children. He was incarcerated more than once for drug offenses and was incarcerated at the time of the adoption hearing. When Jonathan was not incarcerated, he did not have a stable job or a place to live. At no time did Jonathan pay child support for JS and DS despite being ordered to do so by the court in June 2015. He had not seen or talked to the children since June 2016, and there is no evidence that he attempted to see or communicate with the children since that time. This evidence supports the conclusion that Jonathan has not participated in the lives of JS and DS.
Further evidence demonstrates that the Steeles have safe and appropriate housing; the boys are on Tim's medical insurance; Carol takes the boys to the doctor when needed; the boys are up to date on their immunizations; the Steeles understand the responsibilities of adopting the boys; and most importantly, the Steeles have the ability, stability, and desire to continue to care for JS and DS. Based on this evidence, we hold that the circuit court did not clearly err in finding that it was in the best interest of JS and DS to grant the Steeles' adoption petition.
Affirmed.
Whiteaker and Murphy, JJ., agree.

Kala is not a party to this appeal.